O’NIELD, Chief Justice
 

 (dissenting).
 

 It appears to me that a preponderance of the evidence in this ease shows that the defendant, Neu, is insane. I am speaking, of course, of Neu’s mental condition at the time of the trial, or what the law calls “present insanity.” We judges have nothing to do with the question of sanity or insanity at the time of the killing, because that is a question of fact on which depends the defendant’s guilt; and, under our form of procedure, the jury alone must decide the questions of fact relating to the guilt of the party accused. But the question of “present insanity” of a party accused of crime is a question which determines whether he is capable of defending himself, or of rendering assistance to the attorney or attorneys defending him. That
 
 *578
 
 question, of course, has nothing to do with the question of guilt of the party accused, and is therefore a matter for the judges and not the jury to decide.
 

 The records of the War Department, copies of which are in this record, show that this man, Louis Kenneth Neu, was adjudged insane by a military court composed’ of two majors, and was therefore discharged from the United States Army, on the 29th of March, 1926. That was at a time not suspicious, as far as this case goes. The army officers declared in their decree: “From a careful consideration of all the evidence obtainable in the case, and a critical examination of the soldier, we find that he is unfit for service as a soldier because of psychosis, unclassified, recessional or lucid phase. Incapacities by reason of emotional and violent tendencies. The disability is considered permanent.” That was the deliberate judgment of the army officers at Fort Eustis, Va., after they had studied carefully the mental condition of this man Neu in 1926. They considered his insanity permanent, but of a “recessional or lucid phase,” which we are informed by the .testimony of the doctors means that Neu was not continuously insane, but had lucid intervals.
 

 This record shows also that Louis Kenneth Neu was adjudged a lunatic by a court having jurisdiction in the state of Georgia’ on the 9th of February, 1927. The inquiry on which the court’s decree was founded was conducted by two physicians, in Chatham county, Ga., and by the district attorney; and, by the court’s decree, Neu was committed to the Georgia Insane Asylum at Milledgeville, from which he was never discharged, but escaped.
 

 The psychiatrists, or specialists on mental diseases, who testified in this case, stood two to one that Neu was sane at the time of his trial and.was capable of consulting with and aiding the attorneys who were employed to defend him. But the important fact which was proven — and which was not denied — is that Neu was afflicted with
 
 neurosypMKs,
 
 which had been causing erosion of the brain tissue for at least a year, at the time of the trial.
 

 Aside from all of this evidence.tending to show that Neu was not mentally capable of aiding his attorneys in defending him is the significant fact that he did not aid them'“in defending him, but, on the contrary, told everything that he could think of that might facilitate the fitting of the rope about bis neck. In fact, he went so far as to try to impeach the judgment of insanity rendered by the army officers, by saying that it was all a frame-up. to get him out of the army without bringing on a scandal, because of an affair which he had had with an army officer’s wife. And he went so far as to try to impeach the judgment of lunacy rendered by the Georgia court, by saying that it was through his mother’s political influence that the judge and the district attorney and the doctors were all. induced to falsely adjudge him to be insane, to save him from prosecution for a felony. I do not believe there is any truth in Neu’s befouling of the record of the War Department and of the Georgia court. It is possible; of course,- that Neu’s as^ persions upon the army records and upon Georgia’s judicial proceedings were a part
 
 *580
 
 of Neu’s cunning feigning of insanity, if in fact he was feigning insanity. But that is a begging of the question, because the most important of the facts which evidence Neu’s insanity are facts which could not have been framed or manufactured for this occasion.
 

 The opinion which I am now expressing is not influenced at all by the fact that, if I had to make the law, it would not sanction the taking of a human life as a penalty for crime. As long as the law does sanction such punishment a judge must do his part to enforce it, as faithfully as if it were of his making. In fact, if I favored the taking of human life as a punishment for crime, I believe I would see less brutality and more wisdom in the taking of the life of a hopelessly insane criminal than in the taking of the life of a sane one, after a fair trial. But that is not the law. Prom my standpoint I have ho alternative but to dissent from the decree in this case.